**NOT FOR PUBLICATION**                                                                **CLOSED**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CHARLES LOGAN, | ) | Civil No. 06-297 |
| Plaintiff, | ) | Hon. Faith S. Hochberg, U.S.D.J. |
| v. | ) | |
| | ) | **OPINION** |
| JOHN E. POTTER, POSTMASTER GENERAL OF THE UNITED STATES, | ) | Date: June 5, 2007 |
| Defendant. | ) | |

**HOCHBERG, District Judge**

This matter comes before this Court upon Defendant's January 12, 2007 Motion for Summary Judgment. The Court has made its determination after considering the written submissions of the parties and without oral argument pursuant to Fed. R. Civ. P. 78.

**I.      Factual Background:**

Plaintiff Charles Logan, Pro Se, brought this action against the United States Postal Service (USPS) pursuant to the Rehabilitation Act, 29 U.S.C. §791 *et seq.*, alleging that he was discriminated against when he was denied his request for light duty based on his alleged disability.

Plaintiff began working at the United States Postal Service in January 1988 as a letter carrier in the New Brunswick, New Jersey Division. In the spring of 2002, due to decreased volume, the New Brunswick Post Office made route adjustments which resulted in a reduction in the number of letter carrier positions. All letter carrier positions were put up for Bid, and under the terms of the collective bargaining agreements, the bids were awarded according to seniority.

Plaintiff bid on and was awarded a position as a letter carrier with the New Brunswick office for a route in Highland Park, New Jersey. At the time Plaintiff accepted the Highland Park route, he was not on any light or limited duty. On August 12, 2002, Plaintiff began the new route. On August 15, 2002, Plaintiff contacted the Postal Services Office of Workplace Environment in Washington, D.C. with complaints about his new route. Plaintiff also spoke with Arnold Endick, a Workplace Improvement Analyst, to discuss the situation. Mr. Endick offered several suggestions, including contacting the employee assistance program; contacting the Union to work with them on the possibility of bidding on a different route; suggesting that Plaintiff take the exam for maintenance positions; and assisting Plaintiff in completing the required form to take the maintenance test. Mr. Endick also contacted several postmasters about available positions.

On August 16, 2002, Plaintiff told Michael Rizzolo, the Officer in Charge ("OIC") of the New Brunswick office, that he could not do the job any longer and requested a change in position. Plaintiff turned down OIC Rizzolo's offer to work as a part-time flexible mail processor in Monmouth, New Jersey, approximately 25 miles from Plaintiff's home. On the following two days–August 17 and 18–Plaintiff called in sick. On August 19, 2002, Plaintiff called his immediate supervisor, John Rodriguez, and stated that he was not coming in to work and would "be out indefinitely." On August 20, 2002, Plaintiff produced a note from Araceli Deiparine, MSN, NPC stating that he was being treated for Generalized Anxiety Disorder. Plaintiff also wrote a letter to OIC Rizzolo stating that he could no longer work at the New Brunswick location. Plaintiff did not want to return to work immediately and planned to take time off until he and his General Practitioner, Dr. Nancy Somer, thought it was appropriate for him to return.

On August 26, 2002, Plaintiff filed an Office of Worker's Compensation claim with the U.S. Department of Labor in which he claimed that workplace stress from the reassignment resulted in anxiety disorder.[1] On October 9, 2002, after being out for about six weeks, Plaintiff met with IOC Rizzolo and requested a change in job positions as an accommodation to his anxiety condition. Plaintiff alleges that Rizzolo offered him a limited duty assignment but that shortly after Plaintiff arrived to work on his first day, on October 10, 2002, IOC Rizzolo told him to go home because Plaintiff's workers compensation had not been approved yet and his medical documentation prevented him from working at the New Brunswick location. The Postal Service sent Plaintiff for an independent psychological evaluation in order to assess his fitness for duty, and on November 19, 2002, Dr. David Kassoff concluded that Plaintiff suffered from Generalized Anxiety Disorder and that he could no longer work as a letter carrier but that he was able to return to work in a less stressful job. On November 19, 2002, Human Resources employee Fred Hrinik provided Plaintiff with a current listing of vacancies in the Central New Jersey District. On December 4, 2004, the Postal Service and Plaintiff voluntarily participated in the REDRESS program, where Plaintiff's dispute was presented for mediation. The parties were unable to reach an agreement. Before and immediately after this mediation, Plaintiff unsuccessfully applied for various maintenance positions.

In February 2003, Anthony Schultz contacted Plaintiff about a maintenance position in the Old Bridge Post Office. After interviewing and receiving an offer, Plaintiff accepted the

---

[1] The claim was disapproved on the ground that the realignment was administrative, and as such, non-compensable under the Federal Employees Compensation Act. On February 21, 2003 OIC Rizzolo was notified that Plaintiff's claim for compensation benefits had been denied and that a limited duty assignment, if any, should be terminated immediately because light duty is only available to individuals with approved worker's compensation claims.

position on February 25, 2003, began working in April 2003, and currently holds the position. Plaintiff was allowed to use his sick leave, annual leave, and leave without pay during his absence.

On December 19, 2002, Plaintiff filed a formal EEOC Complaint alleging disability discrimination based on his Generalized Anxiety Disorder, specifically claiming that the acts of discrimination took place on October 10, 2002 when he was denied a request for light duty. Plaintiff claimed that other workers with physical and/or mental disorders were working in his facility on limited duty and maintaining their same grade pay, while he was not. In response to an EEO investigator's request, Plaintiff produced an affidavit on May 6, 2003 which stated that he was discriminated based on his disability on October 10, 2002.

The Postal Service filed a Motion for a Decision Without a Hearing on January 29, 2004, arguing that Plaintiff (1) was not disabled within the meaning of the Rehabilitation Act; (2) could not demonstrate that he was qualified to perform the functions of his job; and (3) had not asserted a claim for disparate treatment. The Administrative Law Judge granted the Motion and issued a decision dismissing Plaintiff's claim that he was discriminated against because of his Generalized Anxiety Disorder when his request for light duty was denied. After the Postal Service issued its Final Agency Decision adopting the finding of no discrimination, Plaintiff filed an appeal to the Office of Federal Operations ("OFO"), which subsequently affirmed the finding on July 26, 2005. The July 26, 2005 decision held that Plaintiff was not discriminated against "when, on October 10, 2002, his request for light duty was denied." Plaintiff moved for reconsideration of the OFO decision, and on November 23, 2005, the EEOC affirmed the decision. Plaintiff did not file a Union grievance.

Plaintiff Logan filed this Complaint on January 20, 2006 alleging discrimination under the Rehabilitation Act.[2]  The Complaint stated that Plaintiff's claims were based on "failure to employ Plaintiff for 8 months after disableing (sic) illness.  Failure to promote plaintiff after returning to work and demoting plaintiff once he returned to work."  The Complaint also alleged that "Defendant denied Plaintiff work.  While the Defendant gave other workers with disabilities temp work until reasonably accomodated (sic)."[3]

---

[2] In his Complaint, Plaintiff checked "sex" as the category under which Defendant's conduct was discriminatory.  However, Plaintiff only alleged discrimination based on his alleged disability in his pre-trial submissions, and because the Final Pre Trial Order supercedes Plaintiff's Complaint, there is no claim of gender discrimination under Title VII of the Civil Rights Act before this Court.  *See Basista v. Weir*, 340 F.2d 74 (3d Cir. 1965) (holding that "a pretrial order when entered limits the issues for trial and in substance takes the place of pleadings covered by the pretrial order.")  Furthermore, Plaintiff did not exhaust his administrative remedies with respect to any gender claim.  *See* Plaintiff's December 19, 2002 EEOC Complaint, which alleges disability discrimination but does not discuss gender discrimination.  Therefore, a gender claim is not before this Court.  *See, e.g., Antol v. Perry*, 82 F.3d 1291 (3d Cir. 1996) (holding that a federal employee's disability discrimination charge did not encompass a claim for gender discrimination merely because an investigation would have revealed that employee was a man and two employees who received positions were women, and thus, employee failed to exhaust his administrative remedies.)

Plaintiff's Complaint also alleges a "breach of contract."  The Court will not consider any alleged violation of the collective bargaining agreement under 39 U.S.C. 1208 and 29 U.S.C. 185(a) because the six-month limitations period has passed to file a Union grievance, and Plaintiff never filed any such grievance.

[3] Plaintiff appears to argue that his case is governed by the litigation and settlement of the *Chandler Glover v. Potter*, EEOC No. 320-A2-8011X class action.  However, the *Glover* class action was only open to individuals in permanent rehabilitation positions who were allegedly denied promotional and/or advancement opportunities due to discrimination on the basis of disability.  Because Plaintiff's worker compensation claim was denied and Plaintiff has never occupied a permanent rehabilitation position, Plaintiff's allegations do not fall within the *Glover* class action.

## II. Legal Analysis

### A. Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, "summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988). A fact is material if it might affect the outcome of the case, and an issue is genuine if the evidence is such that a reasonable fact finder could return a verdict in favor of the nonmovant. *Anderson*, 477 U.S. at 248; *In re Headquarters Dodge*, 13 F.3d 674, 679 (3d Cir. 1993).

All facts and inferences must be construed in the light most favorable to the non-moving party. *Peters v. Delaware River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994). The party seeking summary judgment always bears the initial burden of production. *Celotex Corp.*, 477 U.S. at 323. This requires the moving party to establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or to demonstrate that the non-moving party has not shown the requisite facts relating to an essential element of an issue for which it bears the burden. *See id.* at 322-23. Once the party seeking summary judgment has carried this initial burden, the burden shifts to the non-moving party. To avoid summary judgment, the non-moving party must demonstrate facts supporting each element for which it

6

bears the burden, and it must establish the existence of "genuine issue[s] of material fact" justifying trial. *Miller*, 843 F.2d at 143; *see also Celotex Corp.*, 477 U.S. at 324.[4]

**B.** **Analysis**

The Rehabilitation Act prohibits federal employers and employers who receive federal funding from discriminating against individuals with disabilities in matters of hiring, placement, and advancement.[5] *See* 29 U.S.C. §794(a); *Shiring v. Runyon*, 90 F.3d 827, 830-31 (3d Cir. 1996). Federal employees must comply with the administrative procedural requirements of the Rehabilitation Act before initiating a civil action alleging employment discrimination. *See Spence v. Straw*, 54 F.3d 196, 201 (3d Cir. 1995). The only claim presented during the administrative process was whether Plaintiff was discriminated against based on his alleged disability when, on October 10, 2002, his request for light duty was denied. *See Logan v. Potter*, Appeal No. 01A42972, 2005 WL 1903481 (E.E.O.C. July 26, 2005). Therefore, the Court will not consider Plaintiff's allegations in his Complaint that the Postal Service failed to promote him and demoted him upon his return to work after his time off for anxiety because Plaintiff did not

---

[4] If a moving party satisfies its initial burden of establishing a prima facie case for summary judgment, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 *(quoting First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

[5] The standards and definitions established in the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12111 *et seq.*, are applied by courts in evaluating claims brought under the Rehabilitation Act. *See Mengine v. Runyon*, 114 F.3d 415, 420 n.4 (3d Cir. 1997); *see also* 29 U.S.C. §791(g).

properly administratively exhaust these claims.[6]

To establish a prima facie case of disability discrimination under a failure to accommodate or disparate impact theory, a plaintiff must demonstrate by a preponderance of the evidence that (1) he was a disabled person; (2) he was qualified for the position in question (in this case, that he could perform all of the essential functions of the position of mail carrier, with or without a reasonable accommodation); and (3) he was the subject of an adverse employment action. *See Donahue v. Consol. Rail Corp.*, 224 F.3d 226, 229-30 (3d Cir. 2000).[7] A plaintiff must also show that a reasonable accommodation is possible. *Id.* at 229. If the plaintiff meets these burdens, then the Defendant bears the burden of proving, as an affirmative defense, that the accommodations requested by the plaintiff are unreasonable or would cause an undue hardship on the employer. *Id.* As well, if plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the adverse employment action. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 506, 508-10 (1993).[8] The

---

[6] Specifically, Plaintiff did not contact an EEO counselor within the requisite 45 days following the allegedly wrongful acts of failing to promote/demote Plaintiff upon his return to work. *See Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997) (explaining that "exhaustion requires...consultation with an agency counselor within the required times"); *Swingle v. U.S. Postal Service*, 142 F.Supp. 2d 625 (D.N.J. 2001) *aff'd*, 2002 WL 993574 (3d Cir. April 23, 2002) (dismissing Plaintiff's claims based on failure to timely exhaust her administrative remedies where she did not initiate contact with an EEO counselor within the requisite timeframe).

[7] For a disparate treatment claim, a plaintiff must also prove by a preponderance of the evidence that others not in his protected class were treated differently. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973).

[8] The employer satisfies its burden of production by introducing evidence which, if taken as true, would permit the conclusion that there was a non-discriminatory reason for the unfavorable employment decision. *Id.* at 502. This burden is "relatively light." *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). Once the employer answers its

mere assertion of discriminatory motive or intent, without factual evidence demonstrating pretext, is inadequate to preclude summary judgment. *See Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994).

Under the Rehabilitation Act, a "disability" is a physical and/or mental impairment that substantially limits one or more major life activities. *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 195 (2002). The Supreme Court has noted that "[m]erely having an impairment does not make one disabled for purposes of the ADA [Americans with Disabilities Act]." *Id*. at 195. To be substantially limiting, an impairment must "prevent or severely restrict the individual from doing activities that are of central importance to most people's daily lives." *Id*. at 185. Such activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and, if one is not limited in any other major life activity, working. *See id.* (*citing* 29 U.S.C. §1630.2(I)). Plaintiff argues that he suffers from Generalized Anxiety Disorder, first diagnosed on August 20, 2002. After visiting his personal physician, Dr. Nancy Somer, on September 25, 2002, Dr. Somer wrote a letter stating that Logan could continue to work with the USPS as long as he did not work at the New Brunswick location or as a letter carrier.

The Court finds that no reasonable jury could conclude that Plaintiff's Generalized

---

burden of production by articulating a legitimate reason for the unfavorable employment decision, plaintiff must prove by a preponderance of the evidence that the reasons proffered by the defendant were a mere pretext for discrimination. *See St. Mary's Honor Center*, 509 U.S. at 508-10; *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252 (1981); *McDonnell Douglas*, 411 U.S. at 802-804.

9

Anxiety Disorder is a disability within the meaning of the Rehabilitation Act.[9]  Plaintiff did not allege that any of his major life activities as outlined by the applicable case law and statutes were substantially limited.[10]  Even on the first day of his diagnosis with Generalized Anxiety Disorder on August 20, 2002, Plaintiff felt that it was possible that he could work in some capacity other than as a letter carrier.  When Plaintiff met with Dr. Nancy Somer on September 25, 2002, he felt he was able to return to work but did not want to work as a letter carrier.  Indeed, at his worst, Plaintiff could still take care of himself, perform manual tasks, walk, see, hear, speak, breathe, learn, and even work.  Moreover, no reasonable jury could find that Plaintiff's Generalized Anxiety Disorder substantially limited the major life activity of working when he was still able to work in a broad class of jobs, even though he could no longer perform the particular job of a

---

[9] *See, e.g., Hubbard v. Pleasant Valley School District*, 2006 WL 42093, at *4, *6 (M.D. Pa. Jan. 6, 2006) (finding no basis for conclusion that plaintiff's ability to concentrate or interact with others was "substantially limited," and further recognizing that plaintiff's anxiety disorder was not of such severity or duration as to substantially limit him in any major life activity.)

[10] In response to a question at his deposition how Plaintiff's mental condition affected his life, Plaintiff noted that he had trouble sleeping at night and that he felt nervous and anxious.  Plaintiff also stated that he had trouble walking on some occasions when he would enter work but that his difficulties did not require him to use a wheelchair or crutches.  Plaintiff also testified that he was prescribed medication for his anxiety (along with several medications not associated with his anxiety) that interfered with his sexual function.  Plaintiff testified that he was prescribed Levitra which helped the problem.  Plaintiff testified that he did not have any problems performing manual tasks or physical labor.  He was able to perform his household duties; to care for himself with respect to his personal hygiene; to drive a car; and to help his mother with her property repairs.  Plaintiff also testified that "When I was out of work, I was fine.  Believe it or not, I was fine except the only thing is I couldn't sleep."  The Court finds that Plaintiff's condition as a matter of law does not constitute a disability within the meaning of the Rehabilitation Act.  *See Greb v. Potter*, 176 Fed. Appx. 260, 262-63 (noting that vague and unsupported assertions that plaintiff had trouble "bathing, dressing, reaching, lifting, sleeping and maintaining personal hygiene without assistance" could not withstand summary judgment where the plaintiff had not provided the district court with "any way to assess the severity of these limitations, such as testimony from a doctor.")

letter carrier or work in a particular location.[11]  Here, Plaintiff's physician, the USPS physician, and Plaintiff himself stated that he could not work as a letter carrier and could not work at the New Brunswick location.  In February 2003, Plaintiff accepted a position in custodial maintenance in the Old Bridge Post Office, where he currently works, and throughout August and September 2002, Plaintiff was actively applying for other positions in the USPS.  Therefore, the Court finds that no reasonable jury could conclude that Plaintiff is substantially limited in the major life activity of working based on his inability to do one particular job at one particular facility.[12]

---

[11] *See, e.g., Sutton v. United States*, 527 U.S. 471, 491 (1999) (holding that when the major life activity under consideration is that of working, the statutory phrase "substantially limits" requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs and highlighting that the EEOC regulations specify that "the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working"); *Marinelli v. City of Erie (Pa.)*, 216 F.3d 354, 364-365 (3d Cir. 2000)(observing that "an individual that 'is unable to perform a particular job for one employer, or...is unable to perform a specialized job' is not substantially limited in his ability to work" and that plaintiff's inability to drive a certain type of snow plow utilized by the city was considered specialized and insufficient to conclude that he was substantially limited in the major life activity of working); *Walton v. Mental Health Ass'n of Southeastern Pennsylvania*, 168 F.3d 661, 665 (3d Cir. 1999); *Maulding v. Sullivan*, 961 F.2d 694 (8th Cir. 1992), *cert. denied*, 507 U.S. 910 (1993) (finding that the plaintiff who was unable to work in a particular lab due to allergies was not disabled under the Rehabilitation Act); *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 644-45 (2d Cir. 1998) (testimony suggesting that a plaintiff could only perform light or sedentary work merely established that the individual was disqualified from a "narrow range of jobs" and therefore was insufficient to establish that the plaintiff was disabled within the meaning of the ADA); *McKay v. Toyota Motor Mfg, U.S.A., Inc.*, 110 F.3d 369, 372-373 (6th Cir. 1997) (plaintiff's carpal tunnel syndrome, which restricted her from performing medium to heavy work (i.e., any position requiring "repetition motion or frequent lifting of more than ten pounds") was insufficient to establish that the impairment disqualified her from a broad range of jobs.)

[12] Even if Plaintiff could establish that he is a disabled individual, no reasonable jury could conclude that Plaintiff was qualified for the position in question, the second prong of the prima facie case under the Rehabilitation Act.  It is undisputed that upon Plaintiff's request to return to work in October 2002, his own restrictions expressly disqualified him from the position of a mail carrier.  *See Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 286 n.4 (3d Cir. 2001)

**III.     Conclusion**

       For the reasons set forth in this Opinion, the Court grants Defendant's Summary Judgment Motion. An appropriate Order will issue.

                                              /s/ Faith S. Hochberg
                                              Hon. Faith S. Hochberg, U.S.D.J.

---

(recognizing that "employers are not required to accommodate an employee by removing an essential function or restructuring a job so as to avoid it, but, rather, they are to provide an accommodation so as to enable the employee to perform such a function.")  Moreover, Plaintiff's claim that the USPS failed to accommodate his condition has no merit because limited duty is applicable only to those who are granted injury compensation.  Here, Plaintiff was denied injury compensation benefits and was therefore not entitled to a limited duty position.  Further, the USPS *did* accommodate Plaintiff by offering Plaintiff different positions, assisting Plaintiff in trying to obtain a different position, and engaging in mediation with Plaintiff.  In addition, even if Plaintiff had established a prima facie case and the burden shifted to Defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action, *see St. Mary's Honor Center v. Hicks*, 509 U.S. 506, 508-10 (1993), no reasonable jury could find that Defendant did not have a valid, non-discriminatory basis for the denial of plaintiff's request for light duty.  Specifically, Plaintiff's worker's compensation claim was denied because he did not qualify for limited duty since his position changed due to an administrative realignment.

       Furthermore, for Plaintiff's disparate treatment claim, no reasonable jury could find that others not in his protected class were treated differently.  If order for two or more employees to be considered similarly situated for the purpose of creating an inference of disparate treatment, the complainant must show that all of the relevant aspects of his employment are nearly identical to those of the other employees who he alleges were treated differently.  *See International Brotherhood of Teamsters v. Untied States*, 431 U.S. 324, 335 n.15 (1977).  The Court concludes that no reasonable jury could find that other individuals who requested light duty were treated differently.